# CHARLESTON.

## STATE *v.* MOYER.

Submitted September 12, 1905.    Decided October 31, 1905.

1. EMBEZZLEMENT.
    Embezzlement is a fraudulent appropriation or misapplication of the property of another by one in whose care it has been intrusted, with the intention of depriving the owner thereof.    (p. 149.)

2. EMBEZZLEMENT.
    Under section 19, chapter 18, Acts 1903, in order to constitute the crime of embezzlement, it is necessary to show, (1) the trust relation of the person charged, and that he falls within that class of persons named; (2) that the property or thing claimed to have been embezzled or converted is such property as is embraced in the statute; (3) that it is the property of another person; (4) that it came into the possession, or was placed in the care, of the accused, under and by virtue of his office, place or employment; (5) that his manner of dealing with or disposing of the property, constituted a fraudulent conversion and an appropriation of the same to his own use, and (6) that the conversion of the property to his own use was with the intent to deprive the owner thereof.    (p. 149.)

3. EMBEZZLEMENT.
    The mere detention of money belonging to another, without a fraudulent intent to deprive that other of his property, does not constitute embezzlement.    (p. 149.)

4. EMBEZZLEMENT—*Trial—Evidence.*
    On a trial for embezzlement, evidence of the solvency of the defendant, at or immediately prior to the time of the alleged embezzlement, is admissible.    (p. 151.)

5. CRIMINAL LAW—*Good Character—Evidence.*
    In a criminal prosecution, evidence of the previous good character of the defendant is always admissible, but it should be confined to the trait of character at issue.    (p. 152.)

6. EMBEZZLEMENT—*Joint Ownership.*
    Where, by the terms of the contract under which an agent is employed to collect money on commission, he is required to turn over to his employer the whole amount collected before being entitled to commissions, the agent is not such a joint owner of the fund as will prevent his prosecution and conviction for the embezzlement of the whole sum.    (p. 153.)

7. EMBEZZLEMENT—*Instructions.*
    On a trial for embezzlement, it is not error to instruct the jury that if the money, or any portion of the money alleged to have been embezzled, came into the defendant's hands as the agent of and in behalf of his principal, and that he fraudulently converted the said

money, or some portion of the same, to his own use, that he would be guilty of the embezzlement thereof. (p. 154.)

8. EMBEZZLEMENT—*Evidence.*

Under an indictment for embezzlement, it is sufficient for the State to prove the embezzlement of any part of the amount alleged to have been embezzled. (p. 154.)

9. EMBEZZLEMENT—*Demand.*

In a prosecution for embezzlement, it is not necessary to show a demand for the return of money collected by an agent, and a refusal upon his part to do so, where, by the terms of the contract, the time for an accounting and the payment of the money, is definitely fixed. (p. 155.)

10. EMBEZZLEMENT—*Presumptions.*

But under our statute, in a prosecution for embezzlement, if it appears that the money or property is unlawfully withheld by the accused from the person entitled thereto, and that he has failed to restore or account for such money, or other property, within thirty days after proper demand has been made therefor, he shall be presumed to be guilty, but such presumption may be rebutted by proof. (p. 155.)

11. EMBEZZLEMENT—*Demand.*

While such demand may be made for the purpose of creating the presumption of fraudulent conversion against the accused, yet it is not essential when the embezzlement or fraudulent conversion can be otherwise proven, except when, under the peculiar circumstances of the case, a demand should be made. (p. 155.)

12. EMBEZZLEMENT.

On the trial of a charge of embezzlement, proof that the money alleged to have been embezzled by an agent was received in several sums, at different times, and from different persons, during a course of continuous dealing between such agent and his principal, will support a verdict of the jury, finding the aggregate sum as the amount of a single embezzlement. (p. 157.)

Error to Circuit Court, Fayette County.

William C. Moyer was convicted of embezzlement, and brings error.

*Reversed.*

ADAM LITTLEPAGE and J. R. THRIFT, for plaintiff in error.
CLARKE W. MAY, Attorney General, for the State.

SANDERS, JUDGE:

This case is here on a writ of error to the judgment of the criminal court of Fayette county, convicting the defendant of embezzlement.

We are asked by the Attorney General to dismiss the case, for the reason that application for the writ of error should first have been made to the circuit court, or judge thereof, and upon the refusal of the court or judge to grant the writ, or upon the affirmance of the judgment by the circuit court after granting the same, then application could be made to this Court for such writ. The printed record does not show that the prisoner's application for a writ of error was acted upon by the circuit court, but this is a clerical error, for the original transcript of the record shows that the defendant did present his petition to the judge of the circuit court for such writ, and that it was refused. Therefor, the law in this respect, has been complied with.

The conviction is sought to be upheld under section 19, chapter 18, Acts 1903, amending and re-enacting section 19, chapter 145, of the Code, which provides: "If any officer, agent, clerk or servant * * * of any incorporated bank, or other corporation * * * embezzle or fraudulently convert to his own use, bullion, money, bank notes, security for money, or any effects or property of any other person, which shall have come into his possession or been placed under his care or management, by virtue of his office, place or employment, he shall be guilty of larceny thereof. In the prosecution of any such officer, agent, clerk or servant, charged with such embezzlement, fraudulent conversion or larceny, if it appear that the possession of such bullion, money, bank notes, security for money or other property is unlawfully withheld by such officer, agent, clerk or servant, from the person or persons entitled thereto, and that such officer, agent, clerk or servant has failed or refused to restore or account for such bullion, money, bank notes, security for money or other property, within thirty days after proper demand has been made therefor, such accused officer, agent, clerk or servant shall be presumed to be guilty of such offense; but the accused may rebut such presumption by disproving any such facts or by other competent testimony germane to the issue, upon the trial."

The defendant is charged with having entered into a contract with the Prudential Insurance Company of America, a corporation, to solicit and write life insurance for it, and that he entered upon his employment thereunder as such agent,

and solicited and received various applications for life insurance policies, and collected the premiums therefor, and fraudulently converted the amount thereof to his own use. The defendant admits the employment, and the collection by him of the various sums of money as premiums on said policies, but claims that he made a true accounting thereof to his employer.

Embezzlement is purely a statutory offense. It was unknown to the common law, and the statute was enacted for the purpose of supplying what were regarded as defects in the common law of larceny, so as to reach and punish for the fraudulent conversion of money or property which could not be reached by the common law. And while our statute denominates the offense larceny, and concludes by providing that the person so committing an act of embezzlement shall be deemed guilty of larceny, yet embezzlement is generally regarded as a separate and distinct crime, and is so treated. The distinction between embezzlement and larceny is that embezzlement is the wrongful conversion of property without trespass, or where the original taking and possession is lawful. In order to constitute the offense, it is necessary that the property embezzled should come lawfully into the hands of the party embezzling, and by virtue of the position of trust he occupies to the person whose property he takes. Under our statute, referred to, it is necessary to show, first, the trust relation of the person charged, and that he falls within that class of persons named; second, that the property or thing claimed to have been embezzled or converted is such property as is embraced in the statute; third, that it is the property of another person; fourth, that it came into the possession, or was placed in the care, of the accused under and by virtue of his office, place or employment; fifth, that his manner of dealing with, or disposing of, the property, constituted a conversion and appropriation of the same to his own use; and, sixth, that the embezzlement or fraudulent conversion of the property to his own use was with the intent to deprive the owner of his property.

A mere detention of money belonging to another, without a fraudulent intent to convert it to the use of the one by whom it is detained, and to deprive that other person of such property, does not constitute embezzlement. The appropria-

tion of money held by an agent is not, under our statute, larceny, unless it be done with the fraudulent intent to deprive the owner of his property, or the use and benefit thereof. The mere fact of the appropriation or use of property may be an innocent exercise of dominion, if the intention exists to repay or restore it. It is the fraudulent intent that constitutes the offense—the intention to make an absolute appropriation, as contradistinguished from a temporary use without any design to defraud the owner or deprive him of his property. If the Legislature intended to make the mere use of money or other property mentioned an offense, it should not have used the language in the act, which says, to "embezzle or fraudulently convert to his own use."

Now applying the facts to this case. It is established, in fact, it is not otherwise contended, that the accused was the agent of the insurance company, and as such agent he solicited and wrote for it certain life policies, and received the premiums therefor. The persons for whom the policies were written, and the amount of the premiums paid therefor, need not be given, because there is no material difference, if any at all, upon this question. But while the State contends that these premiums have not been paid to the insurance company, yet the defendant claims to have paid all the premiums collected by him, and in addition, that the company was indebted to him at the time he ceased to work for it. Therefore, upon this question, there is a direct conflict between the defendant and the witness, Carter, who was the agent of the company to whom the defendant was authorized to make these payments. The defendant claims that he made all these payments to Carter, while Carter denies this statement. These witnesses stand, in this case, with equal interests, because if Carter did receive the money, he is liable to his company the same as the defendant would be, if he has not made such payments. But, inasmuch as this was a question of fact, and the jury found that fact against the prisoner, the next question is, was there a fraudulent conversion of the money by the prisoner to his own use, with the intention of depriving the owner of his property; but if there has been a conversion of any kind shown, and if so, whether or not it is shown to have been done with fraudulent intent, so as to come within the foregoing definition, we will not say, inasmuch as the case

must be reversed for another reason; neither will we refer to the evidence, except in so far as may be necessary in dealing with the other questions involved.

⋅ The defendant complains that the court refused to permit him to introduce evidence showing the amount of money he had on deposit in the bank when he quit the employment of the company. In a prosecution for embezzlement, the law does not presume, merely because money has been entrusted to an individual, he has embezzled it; but when the State makes such charge, it must prove its truth. It does not devolve upon the defendant to disprove it, or to show what disposition he made of the money. "Since the crime of embezzlement depends upon the existence of a fraudulent intent in the mind of the person by whom the money or property is alleged to have been converted, a wide scope is given to the evidence which may be introduced by the State to show a fraudulent or criminal intent, or on behalf of the defense to show the absence thereof." 10 Am. & Eng. Enc. Law, (2 Ed.), 1032, and cases cited. "Since from its nature intent is incapable of direct proof, great latitude is necessarily allowed in proving this element of the offense. Broadly speaking, any evidence is admissible which has a tendency, even the slightest, to establish fraudulent intent on the one hand, or on the other to show the *bona fides* of the accused." 15 Cyc. 529.

On the question of fraudulent conversion and criminal intent, it is competent to prove the financial condition of the defendant. Proof of solvency would be admissible to show the improbabilty of the act, and all evidence and circumstances, however slight, which tend to prove the improbability of the commission of an offense, should go to the jury, as the question of criminal intent is for the jury to pass upon, from all the facts and circumstances before them. "On the other hand, the fact that a person was in possession of money, tends to negative a desire to obtain it by crime or by borrowing, and is always admissible." 1 Wig. on Ev., p. 476; and in *U. S.* v. *Camp*, 2 Idaho, 215, the Court held: . "On a trial for embezzlement, evidence is competent of defendant's pecuniary condition immediately prior to and during the time the offense is alleged to have been committed."

It is true that Moore, a witness for the State, testified that the defendant had in bank $205.15, but this does not con-

clude the defendant. He is not bound by this statement, but, on the other hand, he had the right to contest it, if he so desired.

Then, again, the court instructed the jury that if at the time the defendant left the service of the company he had enough money in the bank to discharge anything that he might have owed the company, that they should consider the fact in determining whether he had an intention to embezzle the funds. If the jury were to take this fact into consideration, it certainly was proper for them to hear evidence on this point, and it should not be confined to the State giving evidence of this character, but the defendant should have been permitted to show what funds he had there. He may have had many times the amount of the company's claim, which was about $150.00, and if so, he had the right to put this fact before the jury. Motive is generally an important inquiry in a criminal prosecution. It would be improbable that a man of much means would embezzle a very small sum of money, and the jury should have all such facts before them in passing upon the question of fraudulent conversion and criminal intent.

The defendant excepted to the ruling of the court in refusing to permit certain questions propounded by him to witnesses in an effort to prove good character, to be answered. Evidence of previous good character of a person charged with crime is always admissible. It is a fact which he is entitled to have submitted to the jury, the same as any other fact or circumstance favorable to him. Justice Cooley, in *People* v. *Garbutt*, 17 Mich. 9, 97 Am. Dec., 162, in calling attention to the importance of this class of testimony, said: "Good character is an important fact with every man; and never more so than when he is put on trial charged with an offense which is rendered improbable in the last degree by a uniform course of life wholly inconsistent with any such crime. There are cases when it becomes a man's sole dependence, and yet it may prove sufficient to outweigh evidence of the most positive character." So, also, in *Hanney* v. *Commonwealth*, 9 Atl. (Pa.), 339, in holding that evidence of good character is a substantial fact, like any other fact tending to establish defendant's innocence, and that it should be so regarded by both the court and jury, observed that: "Character is of

importance in this: it may of itself, in spite of all evidence to the contrary raise a reasonable doubt in the minds of the jury, and so produce an acquittal. An honest man may, through malice or otherwise, be charged with crime, and his life or liberty be endangered by fallacious circumstances or perjury, and he may be able to produce no evidence to prove his innocence except his own oath; and if, in such case, a blameless life and unstained character are of no avail—are a mere makeweight in a doubtful case—his condition is a sad one.''

It is so fundamental that every man charged with a criminal offense has the right to prove his previous good character, that it is not necessary to say more on the subject; but the evidence should be confined to the trait of character involved in the prosecution. As in this case, the trait of character in issue is one of honesty and fair dealing, evidence that the defendant is a peaceable, quiet and law-abiding citizen, or that he is a man of sober and industrious habits, would not be admissible, because these questions do not bear upon the defendant's character for honesty. The questions asked may be too general in form, but as to that we do not say, because they can be corrected upon the next trial.

It is claimed that the court erred in giving certain instructions for the State, and in refusing two instructions offered by the defendant. The first instruction given for the State is as follows: ''The court instructs the jury that if a person is an officer, agent, clerk or servant of a corporation, and receive money for or on account of such corporation, and he fraudulently converts the whole sum to his own use, he will be guilty of embezzlement though he may be entitled to a share of such money as commission.'' This instruction involves the question as to whether or not an agent who collects money under a contract to retain a certain amount thereof as commission, and to turn over the remainder to his principal, has such an interest in the fund that he cannot be convicted of embezzlement of the whole. This question is presented by the instruction, yet it does not arise in this case, because, by the contract under which the defendant was employed, he was not given the right to retain his commission, but the contract provides that he shall not be entitled to commissions except when the premiums have been paid to the company

in cash, and, also, he is required each week to make a true account of all moneys received by him, and to return, at the same time, all moneys whatsoever received by him, and that he is to receive a salary amounting to a certain per cent. of his collections. Therefore, the instruction, without the concluding words, "though he may be entitled to a share of such money as commissions," is good, and if good without these words, the fact that they are added does not, in any way, prejudice the defendant.

Instruction No. 2, complained of, is as follows: "The court instructs the jury that if they believe from the evidence beyond a reasonable doubt that the prisoner, Wm. C. Moyers, was an officer, agent, clerk or servant of the Prudential Insurance Company of America, a corporation, from the 1st day of April, 1903, to the 1st day of January, 1904, and as such officer, agent, clerk or servant of said corporation that the money or any portion of the money mentioned in said indictment came into his hands for and in behalf of the said The Prudential Insurance Company of America, and that the prisoner fraudulently converted the said money or some portion of the same to his own use, then the said prisoner would be guilty of the embezzlement thereof as charged in the indictment." Complaint is made against this instruction as telling the jury that if the defendant embezzled any portion of the money mentioned in the indictment, that he would be guilty of embezzling the whole sum charged. I do not think it subject to this criticism, because it says if the money or any portion of the money mentioned in the indictment came into the defendant's hands, and that he converted the same, or some portion thereof, to his own use, then he would be guilty of the embezzlement thereof, as charged in the indictment. This evidently means that he would be guilty of embezzling that portion of the money which came into his hands, and which he fraudulently converted to his own use, and would not mean that he embezzled the whole amount, as charged in the indictment.

To the other four instructions given on behalf of the State, we see no objection, and think there was no error in giving them.

Instruction A, which the court refused to give for the defendant, presents the question as to whether or not it was

necessary for the company to have demanded payment of the money by the defendant, and refusal on his part, before he could be found guilty of embezzlement. It is held by some of the courts that it is neeessary to make demand upon the defendant to pay the money or return the property, only when the statute makes such demand and refusal elements of the crime. 7 Ency. Pl. & Pr., 404, and cases cited; *Eidelhoff* v. *State*, 26 Pac. Rep., 627. "Whether proof of a demand is necessary to show the conversion depends wholly upon the language of the statute." Underhill on Crim. Ev., sec. 284. 15 Cyc., 495, says: "However, the weight of the authority is to the effect that a demand for the money or other property alleged to have been embezzled need not be made by the prosecution, in the absence of statute to the contrary, except under the peculiar circumstances of the particular case." Our statute does not require a demand and refusal to be shown, and as to whether or not a demand is necessary, depends upon the circumstances of the particular case. But, in a prosecution under the statute, if it appears that the possession of the money or property alleged to have been embezzled is unlawfully withheld by the defendant from the person lawfully entitled thereto, and that the defendant has failed or refused to restore or account for the same within thirty days after proper demand has been made therefor, such accused officer, agent, clerk or servant shall be presumed to be guilty. But this presumption is not conclusive, and may be rebutted by any competent evidence. This statute is not designed to require a demand to be made before one can be convicted of embezzlement, but it affords a cumulative remedy; that is, if the State can show that the money or property is unlawfully withheld, and that the statutory demand has been made therefor, and that the money has not been paid or the property restored within the time named in the statute, then the defendant will be presumed to have converted it to his own use, without other proof of a fraudulent conversion. But while the statute provides for such demand, and raises a presumption of guilt against the accused when the same is shown to have been made and not complied with within the statutory period, it does not change the rule so as to dispense with a demand when, under the peculiar circumstances of the case, it should be given. In this case, under

the contract, the defendant agreed to make weekly reports, and to remit all money received by him every week, and, inasmuch as a definite time is fixed by the contract for the payment of the money, it would seem from the authorities that no demand for its payment is necessary, but the fact of conversion can be proved by other evidence. In all cases for embezzlement or fraudulent conversion, evidence of demand for a return of the money or property, and its refusal by the defendant, is competent for the purpose of tending to show conversion; but while it is always admissible, yet it is not always necessary. In the case of *Reynolds* v. *State*, 47 Atl. Rep., (N. J.), 644, the court, speaking upon this subject, and in reference to the case of *Fitzgerald* v. *State*, 50 N. J. Law. 475, says: "This assignment is undoubtedly grounded upon what this court said on the subject of a demand in *Fitzgerald* v. *State*, 50 N. J. Law, 475, (14 Atl. 476). That case has given some misapprehension as to the law on this subject, although a careful reading of it seems to leave it free from any uncertainty. That case does not hold that it is necessary in all cases where money comes lawfully into the hands of an agent or other person within the statute to make demand before criminal proceedings may be instituted. All that was held there was that the mere neglect to pay over will not justify a conviction for fraudutent conversion where funds have come lawfully into the hands of the defendant. A demand is only one class of evidence for proving fraudulent conversion. Other classes are: (1) Where, by statute, a public officer is required to pay over funds at a definite time, and fails to do so, and there is proof that he has not done so, and has applied the same to his own use, that is evidence from which a jury may find a fraudulent conversion, even without a demand; or (2) where, by the rules and regulations or agreement under which the defendant is employed, and to which he is required to conform, a time is definitely fixed for him to account for moneys received, and it appears that he has lawfully received moneys of his employer, but has not paid over same in accordance with such rules, regulations or agreement, but has converted the same to his own use, this is also evidence from which the jury may find that there was a fraudulent conversion of such funds without formal demand; or (3) where it appears by the

evidence that the embezzler has fled after the alleged embezzlement, and that his act and conduct were of such a character, in connection with his flight, as to indicate that his intent was to fraudulently take or convert the funds which he retained, there the jury may also find from such facts a fraudulent conversion, even without a demand. In all cases not coming within any of the classes above mentioned, but which are of an uncertain, or general, or special agency, where the time for the return of the funds collected is indefinite, or not fixed, or which is at the pleasure of the agent or servant, there a demand or other evidence of a fraudulent intent to convert may be necceassary to put the defendant in a position of having fraudulently converted the money to his own use. It should be said, however, that a demand and refusal does not of itself, in any case establish fraudulent conversion, or conversion by a defendant to his own use, but that it is only evidence to go to the jury upon the question of the defendant's fraudulent conversion.'' Therefore, we think it was not error to refuse to give the instruction in this case.

The defendant's instruction, B, presenting the theory of joint ownership, was properly refused, for the reason, as stated in the discussion of instruction No. 1 for the State, under the contract of the defendant with the company, he was not entitled to any part of the money collected by him until he had paid it over to the company, and, therefore, he could not have been a joint owner, with the company, of the fund.

It is assigned as error that the court permitted the State to introduce evidence of a number of distinct transactions, in order to make up the aggregate sum alleged to have been embezzled. It is true the evidence shows that the money which the defendant is charged with having embezzled was collected by him at different times and from different persons, but the collection of these several sums by the defendant was lawful, and in the due course of his employment, and if there was shown to be a conversion, it was not a distinct and independent conversion of each sum, but the conversion of each sum as one transaction. "On a trial of a charge of embezzlement, the fact that the money alleged to have been embezzled by the defendant was received in several sums at

different times and from different persons, affords no ground for requiring the prosecutor to elect on which sum he will rely for conviction." *Gravatt* v. *The State*, 25 Ohio St. 162.

· We do not think the court erred in this respect. For the reasons given herein, the judgment of the criminal court is reversed, the verdict of the jury set aside, and a new trial awarded the defendant.

*Reversed.*

POFFENBARGER, JUDGE, *dissenting:*

Unless prejudicial to the prisoner, error in rulings on evidence and instructions is not ground for a new trial. In the absence of something in the record by which the court can clearly see that no injury or prejudice to the prisoner could have resulted from such an erroneous ruling, it is cause for a new trial, for error is presumed to have been prejudicial unless the court can see that it was not. *State* v. *Musgrave*, 43 W. Va. 672; *Robinson* v. *Lowe*, 56 W. Va. 308; *Ward* v. *Ward*, 47 W. Va. 766; *Osborne* v. *Francis*, 38 W. Va. 312; *Ward* v. *Brown*, 53 W. Va. 228; *State* v. *Douglass*, 28 W. Va. 298. The rule in civil and criminal cases is the same in this respect. *State* v. *Douglass*, 28 W. Va. 298.

The prisoner was entitled to show his financial condition, and the court refused to allow him to testify, concerning it in one instance; but, if other evidence in the case disclosed it, how could he have been injured by the error? He himself was permitted to say, in the course of his testimony, at another time, that he had had about $350.00 when he began work for the company, and had nothing at the time of the trial. What money he had in bank appeared from the evidence adduced by the state, as shown by JUDGE SANDERS' opinion. In this way, the jury had before them the financial condition of the prisoner in substance. It was conceded that he had had more money, at the time the conversion is alleged to have been made, than he was charged with having misappropriated and could have paid what he owed, and his own statement as to what he had had when he began work, made it plain that he was probably worth nothing more. He had no right to have his financial condition made the principal issue in the case and ascertained with the exactness and

accuracy with which a commissioner in chancery would have reported it. As it substantially appeared in the case, no matter how, he had all the benefit from it that could have resulted from an ascertainment of it to the dollar, and was not injured in the least by the failure of the court to allow him to show it in a particular manner and at a particular time. The error herein noted being the only one found in the record, I cannot agree to reverse the judgment and allow a new trial for that alone, and, therefore, dissent.