STATE OF NEW JERSEY, DEFENDANT IN ERROR, v. OTTO J. STRASSER, PLAINTIFF IN ERROR.

Submitted July 8, 1912—Decided November 18, 1912.

An attorney-at-law agreed to prepare and file a certificate extending the corporate existence of a company at a total expense to the company of $75, including filing fees. The company's check for $30 was paid to the attorney for the state filing fee, deposited by him, and his own check for $30, which he sent to the secretary of state was protested. The company obtained its certificate by the payment to the secretary of state of $30. Upon his trial for the fraudulent conversion of the $30 that had been paid to him, the defendant offered evidence to show that the company had not paid him the $75 it had agreed to pay for its certificate. *Held,* that the exclusion of this evidence was error, as it was competent and material upon the question whether any fraudulent conversion of the company's money had resulted or could have resulted unless the company paid more for its certificate than it had agreed to pay, and hence was relevant upon the question of a fraudulent intent.

---

On error to the Supreme Court.

For the plaintiff in error, *Addison Ely.*

For the defendant in error, *Wendell J. Wright,* prosecutor of the pleas.

The opinion of the court was delivered by

GARRISON, J. The plaintiff in error, Otto J. Strasser, was indicted for the fraudulent conversion of $30 intrusted to him by a certain corporation as its agent. He was convicted as charged and brings this writ of error upon a bill of exceptions sealed at the trial. The facts were these: Strasser was an attorney-at-law employed as such by Claus Ahrens & Company, a corporation of this state, that was originally incorporated for five years. In January, 1911, Strasser was engaged by this company to prepare and file a certificate extending the term of its corporate existence which he agreed to do at a cost to the company of $75, which was to include all expenses. The payment to Strasser of a part of this sum, which is the basis of the criminal charge against him, is best given in the exact language of the only witness who testified upon the subject. This witness was Eleanor Frye who, after stating that she was secretary and treasurer of Claus Ahrens & Company, was asked to state a conversation she had with Mr. Strasser on February 9th, 1911, to which her reply was: "Mr. Strasser called me up over the phone and asked me for two checks, one for $30 and one for $5, for filing the extension papers with the secretary of state, and the recorder's office, I believe, in Hackensack, respectively. Q. What did you say to him, if anything? A. Well, I told him I would let him have the checks." She further testified that she took the checks herself to Mr. Strasser but had no further conversation with him; and this was the entire testimony upon the subject. The subsequent history of the transaction was that Strasser deposited the checks, mailed to the secretary of state his own check for $30, which was protested, and that the certificate was filed by the secretary of state upon receiving from the company its check for $31.40, to cover the filing fee and cost of protest. This was the state's case.

In his defence, Strasser, not denying any of these facts, took the stand and sought to prove the additional fact that Claus Ahrens & Company had not paid him the $75, *i. e.,* the sum the company agreed to pay for its certificate of extension. The question was objected to by the prosecutor as incompetent and immaterial, which objection was sustained by the court and an exception allowed upon which error has been duly assigned.

The rejection of this testimony was in our opinion erroneous. It was relevant to the fraudulent conversion with which the defendant was charged. The case of the state rested essentially upon an intent to defraud this corporation of its property, *i. e.,* of the $30 which was part of the stipulated cost of obtaining the certificate. The corporation had agreed to pay this sum as the total expense to it of the certificate extending its corporate life. As long therefore as it got all that it bargained for without being obliged to expend more than the agreed price it could not be defrauded. The state's case showed that after paying the $35 to Strasser the company got its certificate of extension by the payment of the additional sum of $31.40. At this juncture Strasser had done all he agreed to for the $75, with the exception of paying this filing fee, and if the two checks for $35 were all it had paid to Strasser the company had still remaining in its hands $40 with which to pay the filing fee of $30, and hence was not defrauded, and could not be as long as it had not paid for its certificate more than it agreed to pay.

Unless and until the defendant's conduct compelled or induced the company to part with more than $75 in order to obtain its certificate, no fraud resulting in a criminal conversion of its money could be effected, and where no fraud could be effected the presumption is that no fraud could be intended. *State* v. *Redstrake,* 10 *Vroom* 365.

It is the fraudulent intent that is essential in cases brought under this statute. Section 184 of the Crimes act. As was said in *State* v. *Burnell,* 33 *Vroom* 510: "To warrant a conviction under a statute like that *sub judice* (this same statute) a fraudulent intent is essential." To the same effect

are *State* v. *Temple*, 34 *Id.* 375; *State* v. *Deutsch*, 48 *Id.* 292, and in one aspect, *State* v. *Fitzgerald*, 21 *Id.* 475.

The material element of fraudulent intent, as was pointed out by Mr. Justice Reed in State *v.* Redstrake, is a design to affect the rights of another, to get the property of another; in the present case to get more of the money of Claus Ahrens & Company than it had agreed to pay. If this was no part of the defendant's design it had a direct, indeed a controlling, effect upon the question of his fraudulent intent.

The defendant had a right to argue that unless the intent existed to get more of the money of Claus Ahrens & Company than they had agreed to pay, the intent to defraud them did not exist. They had agreed to pay $75, hence it was essential to the validity of this argument to show that they had not paid that sum. Whether or not an intent to defraud Claus Ahrens & Company existed was for the jury, hence the weight to be given to this argument was for them, but the argument could not be made unless the necessary facts were permitted to be proved.

The fact that the proffered testimony was no extenuation of the attorney's conduct, from the professional standpoint, is aside from the case. The defendant was not being tried for unprofessional conduct, or even for a breach of a civil contract, but for the criminal conversion of another's money. Upon this charge he had a right to show, if he could, that the transaction instead of being a criminal conversion was one in which each party had got what the other party agreed he should have.

The error in excluding the defendant's testimony was therefore prejudicial to him in making his defence on the merits.

The judgment of the Supreme Court is reversed to the end that a *venire de novo* may be awarded.

*For affirmance*—THE CHANCELLOR. 1.

*For reversal*—GARRISON, TRENCHARD, BERGEN, MINTURN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, TREACY, JJ. 10.