### LEE v. UNITED STATES.
### No. 236.

Municipal Court of Appeals for the District of Columbia.

Dec. 27, 1944.

Rehearing Denied Jan. 9, 1945.

---

William T. Hannan, of Washington, D. C., for appellant.

John P. Burke, Asst. U. S. Atty., of Washington, D. C. (Edward M. Curran, U. S. Atty., and James J. O'Leary, Asst. U. S. Atty., both of Washington, D. C., on the brief), for appellee.

Before RICHARDSON, Chief Judge, and CAYTON and HOOD, Associate Judges.

HOOD, Associate Judge.

Appellant originally filed his statement of errors covering two points, namely: (1) Error claimed in the admission of testimony respecting the finding of unpaid bills at the home of appellant, and (2) error in denying a new trial. After the statement of proceedings and evidence had been approved by the trial court, new counsel appeared in the case and obtained from this court permission to file a supplemental statement of errors. The supplemental statement contained the following errors: (1) The verdict is contrary to the evidence, and (2) the verdict is contrary to the law.

Rule 20 of this court provides:

"At the time of filing the designation of record, or stipulation with respect thereto, the appellant shall file a statement of the errors claimed to have occurred in the trial court and upon which he intends to rely on appeal."

The statement of errors is required to be filed prior to filing the proposed statement of proceedings and evidence (Rule 27 (e), (g)); and it is obvious that this is required in order that the appellee and the trial judge in considering the proposed statement of proceedings and evidence shall have before them the errors claimed in order that the statement of evidence shall fully cover points raised by the statement of errors. It is also plain from the wording of Rule 20 that the statement of errors shall be specific in terms.

The testimony in this case, as in the majority of cases tried in the lower court, was not stenographically reported. For this reason the statement of evidence is in narrative form and does not report the evidence in the complete detail possible when the evidence is stenographically reported. Our Rule 23(a) requires that the statement include only such portion of the evidence as is necessary fully and clearly to present the rulings of the trial court in which error is claimed; and all statements of evidence are required to be submitted to opposing counsel and to be approved by the trial court. As a result statements of proceedings and evidence are prepared in view of the errors claimed and frequently evidence relating to points not assigned as error is omitted entirely or only briefly outlined. Our rules, therefore, contemplate that assignments of error shall be specific and definite.

In the instant case, when the statement of evidence was prepared and approved there was before the trial court only one specific assignment of error, the one relating to the admission of testimony regarding unpaid bills. The supplemental statement of errors was of the most general nature. The points argued under them relate to the sufficiency of the evidence, although no motion for directed verdict had been made either at the close of the Government's case or at the close of the entire case. The assignments of error pointed out no particular error occurring at the trial and under the circumstances we are unable to ascertain whether the evidence supported the judgment, because the statement of evidence before us was not prepared to cover the points now argued in the brief. The trial court and appellee had

no opportunity to insist that the statement of evidence be drawn with more specific detail relating to these points.

■■ Save in exceptional cases, we can review only points specifically brought to the attention of and ruled upon by the trial court. These points must be definitely assigned in the statement of errors claimed in order that the statement of proceedings and evidence shall fully and clearly present the rulings in which error is claimed. Otherwise, we would be reviewing a different case from that actually tried below. We shall confine our review here to the specific error asserted in the admission of testimony.

. Appellant was tried and convicted on a charge of embezzlement. Testimony of the Government tended to show that appellant, a ticket seller employed by the Washington Terminal Company, embezzled the proceeds from the sale of a railroad ticket. A police officer and an employee of the Terminal Company testified that while investigating the matter appellant gave them permission to search his home for tickets, stubs and a punch machine, that they made the search in company with appellant, and that they found nothing "except many unpaid bills amounting to hundreds of dollars for furniture and jewelry."

Appellant objected to the testimony regarding the unpaid bills and assigned its admission as error.

Appellant insists, though not too strongly, that evidence of his financial condition was incompetent. He cites Masters v. United States, 42 App.D.C. 350, 357, Ann. Cas.1916A, 1243, an embezzlement case, wherein it was said:

"On the other hand, evidence of the financial standing of the defendants is incompetent, since a rich man is as likely to violate the law as a poor man."

We can put little reliance upon the quoted statement standing alone, in view of the later case of Ambrose v. United States, 45 App.D.C. 112, 125, also an embezzlement case, wherein the court said:

"It is competent for the government to prove the financial condition of the accused at or immediately prior to the alleged offense."

In the latter case the court cited as authority for its ruling State v. Moyer, 58 W.Va. 146, 52 S.E. 30, 6 Ann.Cas. 344, and Govatos v. State, 116 Ga. 592, 42 S.E.

708. In the Moyer case the court said [58 W.Va. 146, 52 S.E. 33]:

"On the question of fraudulent conversion and criminal intent, it is competent to prove the financial condition of the defendant."

In the Govatos case the syllabus by the court reads as follows:

"In the trial of one charged with converting to his own use the proceeds of sales of property intrusted to him to sell, evidence is competent tending to show that at the time of the alleged conversion the accused was in debt and in need of money; such evidence to be considered by the jury in determining what was the motive of the accused."

These rulings are in accord with the weight of authority. See Dimmick v. United States, 9 Cir., 135 F. 257; Bridges v. State, 103 Ga. 21, 29 S.E. 859; Agar v. State, 176 Ind. 234, 94 N.E. 819; Wigmore on Evidence (3d Ed.), sec. 392.

Appellant, however, argues strongly that even if evidence of his financial condition was competent, proof must be confined to the time of the offense or shortly prior thereto and that the evidence received did not meet this requirement. The alleged offense was committed December 22, 1943, and the search at which the unpaid bills were found occurred January 29, 1944, or thirty-eight days later.

■■ Recognizing that under the rule the prosecution may show defendant's straitened financial condition only at or immediately prior to the commission of the offense, it does not follow necessarily that the unpaid bills found in defendant's possession a comparatively short time after the offense have no probative value as to his financial condition at the time of the offense. Unpaid bills look backward and while reflecting a present condition also throw light on the not too distant past. This month's bills are not without relation to last month's financial condition. We think the evidence was competent and its weight, however slight, was for the jury. Appellant, of course, had the right by cross-examination of the witnesses to bring out any facts which might offset the adverse effect of the bills; and when he took the stand on his own behalf he could have explained the circumstances relating to the bills if he so desired. It appears from the record that he did neither.

Appellant relies on the case of State v. Cantor, 93 W.Va. 238, 116 S.E. 396, where on a trial for embezzlement and larceny it was held incompetent for the prosecution to show a sale of property by the defendant some months after the alleged offense. That case, we think, is not controlling for it was there pointed out that a mere sale of property tends to show neither bad nor good financial condition.

Affirmed.