STATE OF WEST VIRGINIA

*v.*

EDDIE A. FRASHER

(No. 13855)

Decided April 1, 1980.

*Lewis, Ciccarello, Masinter & Friedberg and Arthur T. Ciccarello,* for plaintiff in error.

*Chauncey H. Browning,* Attorney General, *Ronald A. Shipley,* Assistant Attorney General, for defendant in error.

MILLER, JUSTICE:

Eddie A. Frasher appeals his embezzlement conviction from the Circuit Court of Kanawha County. His primary assignments of error are that the state failed to prove that the true owner's property was embezzled and that he was an agent within the meaning of the embezzlement statute, W. Va. Code, 61-3-20. Other assigned errors relate to rulings of the trial court on evidentiary points and instructions.

The defendant Frasher operated a business known both as Frasher's Mail Service and Frasher License and Title Service. The chief function of the business was to

expedite for automobile dealers the obtaining of automobile titles for the dealers' purchasers.

The transactions here involved an arrangement between Frasher's business and an automobile dealer, Parkersburg Datsun, Inc. [Datsun]. The record establishes that the defendant's wife would obtain the title applications and the dealer's check covering the title taxes and license fees and deliver the documents to Frasher in Charleston, who would present them to the Department of Motor Vehicles, obtain the title certificates and license plates, and return them through his wife to the dealer.

Datsun would make its check payable either to the defendant Frasher, his wife or to the business itself for the total amount of title taxes and license fees due on the various title applications turned over to the Frashers. These checks would then be deposited by the Frashers and, in turn, new checks would be drawn by the defendant on his business account made payable to the Department of Motor Vehicles to cover the fees and tax costs.

The basis for the embezzlement charge was that there had been an alteration of the title applications by the defendant which lowered the stated value of the motor vehicles, thereby reducing the amount of the license taxes due under W. Va. Code, 17A-3-4.[1] As a consequence, it was alleged that the defendant paid a lower amount of title tax and retained the difference. The indictment was substantially in accord with the statutory form, W. Va. Code, 62-9-11, and alleged that the defendant embezzled the sum of $1,546.75 of "bullion, money, bank notes, drafts, securities for money and other effects and property of and belonging to the said Parkersburg Datsun, Inc."

---

[1] W. Va. Code, 17A-3-4, provides in pertinent part:

"A tax is hereby imposed upon the privilege of effecting the certification of title of each vehicle in the amount equal to five percent of the value of said motor vehicle at the time of such certification. ...."

## I

The threshold question raised by the defendant is whether the embezzlement indictment was insufficient in charging that he embezzled from Datsun as distinguished from Datsun's purchasers. The defendant urges that Datsun was a mere conduit for paying to the Department of Motor Vehicles [Department] the title taxes and license fees owed by the individual purchasers, and that the indictment was insufficient in that it had to charge embezzlement from the purchasers themselves. Defendant contends alternatively that, because the purchasers in fact received their titles, the State itself is the only party who actually suffered a loss, and thus that there was no embezzlement at all, but at most an act of fraud against the State under W. Va. Code, 61-3-22. We need not deal with this latter proposition, as under the law the defendant could be charged with embezzling from Datsun.

The record demonstrates that Datsun added the automobile title taxes and fees to the purchase price of the vehicle and charged the purchaser the total sum. Datsun did not earmark the tax money or segregate it in any manner, but commingled it with other funds in its bank account. Datsun's office manager wrote checks on the Datsun bank account to pay to Frasher the taxes and fees due the Department. The defendant had no agreement with the individual purchasers to pay the title taxes and fees, but solely with Datsun.

For all practical purposes, therefore, the checks presented to Frasher represented Datsun's money, or at least money held by Datsun as a fiduciary for the automobile purchaser. On these facts, to characterize Datsun as simply a "conduit" is meaningful only if the law requires that an embezzlement can occur only from the actual owner of the property, and not simply from the individual or entity that is the ostensible legal possessor of the property.

We considered our embezzlement statute in *State v.*

*Moyer*, 58 W.Va. 146, 52 S.E. 30 (1905), and in Syllabus Point 2 set out the elements of the crime:

"[I]n order to constitute the crime of embezzlement, it is necessary to show, (1) the trust relation of the person charged, and that he falls within that class of persons named; (2) that the property or thing claimed to have been embezzled or converted is such property as is embraced in the statute; (3) that it is the property of another person; (4) that it came into the possession, or was placed in the care, of the accused, under and by virtue of his office, place or employment; (5) that his manner of dealing with or disposing of the property, constituted a fraudulent conversion and an appropriation of the same to his own use, and (6) that the conversion of the property to his own use was with the intent to deprive the owner thereof."

We also stated in *Moyer* that embezzlement is a purely statutory offense, since:

"It was unknown to the common law, and the statute was enacted for the purpose of supplying what were regarded as defects in the common law of larceny, so as to reach and punish for the fraudulent conversion of money or property which could not be reached by the common law. ... The distinction between embezzlement and larceny is that embezzlement is the wrongful conversion of property without trespass, or where the original taking and possession is lawful. In order to constitute the offense, it is necessary that the property embezzled should come lawfully into the hands of the party embezzling, and by virtue of the position of trust he occupies to the person whose property he takes. . . ." [58 W.Va. at 149, 52 S.E. at 32].

This is a generally recognized legal principle. *See* 26 Am. Jur. 2d *Embezzlement* §§ 1-3; 29A C.J.S. §§ 2, 4; W. La-Fave & A. Scott, *Criminal Law* § 89 (1972), at 644 *et seq.*

*Moyer* demonstrates that the hallmark of embezzlement is the trust relationship and the subsequent con-

version or appropriation of the entrusted property. *See State v. Riley*, 151 W.Va. 364, 390, 151 S.E.2d 308, 324 (1966). As in larceny, the taking of the property need not be from the actual owner of the property, but may be from one who has lawful possession of it. In *State v. Workman*, 91 W.Va. 771, 114 S.E. 276 (1922), a county commissioner was charged with embezzling county funds. He and another commissioner had voted to authorize the purchase of a farm and had an arrangement with the owner to receive a kickback from the proceeds. Workman argued that he never had the funds in his actual possession, since the sheriff honored the commission's warrant from funds over which he had exclusive control and which were on deposit in a local bank. We held actual possession not to be necessary:

> "That fund was under the care and management of the county court, consisting of its president and the two commissioners. ... It makes no difference that the fund, when appropriated, was not in their actual possession...." [91 W.Va. at 775, 114 S.E. at 277].

In *State v. Heaton*, 23 W.Va. 773 (1883), the defendant was convicted of stealing a sorrel horse from Amanda Miller. The evidence demonstrated that Mrs. Miller's husband had owned the horse and had died intestate so that she and her children had an undivided ownership interest in the horse. We concluded that she had a special property interest sufficient to support the indictment:

> "Russell in his work on Crimes, volume 2, page 288, thus lays down the common-law: 'There is no doubt that there may be a sufficient ownership of the goods stolen in a person who has only a *special property* in them; and that they may be laid as the goods and chattels of such person in the indictment. A lessee for years, a bailee, a pawnee, a carrier and the like have such special property; and the indictment will be good, if it lay the property of the goods either in the real owners, or in the person having only such special

property in them.'" [Citation omitted] [Emphasis supplied] [23 W.Va. at 781].

In *State v. DeBerry*, 75 W.Va. 632, 84 S.E. 508 (1915), the defendant had been given possession of three rugs by one Burns in order to clean them and he allegedly converted them to his own use. At trial, the defendant argued that the rugs were owned by two corporations of which Burns was an officer. We found that at the time of the alleged offense the actual or constructive possession of the property was in Burns, and stated in Syllabus Point 2:

> "On the trial of one charged with the larceny or embezzlement of goods proof of actual or constructive possession of the goods by the one alleged in the indictment to be the owner thereof is sufficient."

Here, the defendant relies on *State v. Matthews*, 143 Tenn. 463, 226 S.W. 203 (1920), and *Washington v. State*, 72 Ala. 272 (1882), which held or implied that an embezzlement indictment must name the real owner of the property as the victim, and not a bailee or any other agent, or that the proof must demonstrate an agency relationship between the alleged embezzler and the true owner. However, these cases are contrary to our law and what appears to be the majority view of the courts, which follows our position that embezzlement can occur from one having the lawful possession of the property and that the true owner of the property need not be alleged in the indictment.

In a reverse factual pattern, the federal courts have held that where money or property belonging to the United States and granted to third parties is embezzled, the money or property is still that of the United States if the Government retains substantial control of it or a property interest in it. *United States v. Leavitt*, 599 F.2d 355, 359-61 (10th Cir. 1979), *cert. denied*, 444 U.S. 833, 62 L. Ed. 2d 43, 100 S.Ct. 64; *United States v. Smith*, 596 F.2d 662 (5th Cir. 1979); *United States v. Maxwell*, 588 F.2d 568, 571-74 (7th Cir. 1978), *cert. denied*, 444 U.S.

877, 62 L. Ed. 2d 106, 100 S.Ct. 163 (1979); *United States v. Dupee*, 569 F.2d 1061, 1064 (9th Cir. 1978).

In *United States v. Maxwell*, 588 F.2d at 573, the court criticized as a "technical commercial law analysis" the approach requiring a direct link between the alleged embezzler and the true owner. It stated that "the relevant inquiry becomes whether the federal government maintains a property interest in the funds in [the third party's] account." [588 F.2d at 573]. The court concluded that the money in question, federal funds for aid to college students, retained its federal character despite its having been deposited in the college's account because the Government had "a reversionary interest evidenced by the power to reallocate money already allocated to an institution if the institution does not anticipate using that money before the end of the period for which it is available." [588 F.2d at 573]. This approach is obviously analogous to the special property interest analysis made by this Court in *State v. Heaton, supra*.

Other state courts have also avoided imposing technical ownership requirements on the state in embezzlement cases. In *Tabbs v. State*, 10 Md. App. 177, 268 A.2d 598 (1970), a city policeman was charged with embezzling money belonging to the police department. He had allegedly taken federal money from a federal agent with whom the city police were cooperating in an investigation. In holding that the indictment satisfied the statutory requirement that the embezzlement must arise from the officer's receipt of property "for or in the name or on account of his master or employer," the court stated:

> "We also think it clear that appellant took [the federal agent's] money in the course of his police duties and therefore necessarily received it 'for or in the name or on account of his master or employer,' *viz.*, the Police Commissioner. Whether the money taken from [the federal agent] was to be used as evidence, or only held for safekeeping, the ultimate responsibility for it resided in the Police Commissioner in his capacity as the execu-

tive head of the Department. Of course, it is not essential under [the statute] that ownership of the embezzled funds be in the master or employer; proof of any legal interest or special property in the money will suffice. [Citations omitted]. That the Police Commissioner had such an interest is, we believe, entirely plain." [10 Md. App. at 181-82, 268 A.2d at 601].

In *State v. Brewer*, 7 Ore. App. 158, 490 P.2d 202 (1971), the defendant was charged with embezzling weighing scales from his employer and the indictment identified the scales as being the property of the employer. Because, however, the state's proof disclosed that the employer had possession of the scales by virtue of a loan or bailment from another person, the defendant urged that there was a fatal variance between indictment and proof. The court, however, had no difficulty in concluding that the variance was immaterial:

"In both embezzlement and larceny cases it has long been held that a taking is wrongful, not only from the person owning legal title, but also from any person entitled to possession. [Citations omitted]. It follows that there was no failure of proof or fatal variance. [Citation omitted]." [7 Ore. App. at 162, 490 P.2d at 204].

*See also Garrett v. State*, 147 Ga. App. 666, 250 S.E.2d 1 (1978), *aff'd on other grounds*, 243 Ga. 322, 253 S.E.2d 741 (1979) (holding that there was no fatal variance between an allegation that defendant embezzled money from clerk of court and proof that money belonged to the county).

On the basis of the foregoing law, we hold that the indictment in the present case validly charged the defendant with embezzling money from Datsun.

## II

Defendant also contends that the State failed to prove that he, as distinguished from his wife, was an "agent" of Datsun within the meaning of the statutory phrase

"any agent, clerk or servant,"[2] and failed to establish that he converted money, as opposed to checks, to his own use.

Defendant misconceives the nature of the agency relationship involved in embezzlement. It need not be a formalized agreement, but occurs as the result of a trust relationship where a person is entrusted with the possession of another's property. In *State v. Fraley*, 71 W.Va. 100, 76 S.E. 134 (1912), where the defendant had been entrusted to collect a person's check and converted the money to his own use, we held in Syllabus Points 3 and 4:

> "The agency of one charged with the embezzlement of money or other property, under said section 19, chapter 145, Code 1906, is sufficiently established, by evidence showing that the agency related to but the single transaction of intrusting the property embezzled to the defendant; no previous relationship of principal and agent is necessary."

> "The agency thus established is within the statute on embezzlement, whether the contract of agency provides for compensation or not."

Most courts have concluded that an "agent" under an embezzlement statute, which employs the terms "agent," "clerk," "servant," "officer," or like terminology, can be anyone entrusted with property by virtue of his position, and not simply an agent within the strict definition of the common law. *State v. Moreno*, 156 Conn. 233, 240 A.2d 871 (1968); *State v. Compton*, 92 Idaho 739, 450 P.2d 79 (1969); *People v. Riggins*, 8 Ill.2d 78, 132

---

[2] The embezzlement statute, W. Va. Code, 61-3-20, reads in relevant part:

"If ... any agent, clerk or servant of any firm or person, or company ... embezzle or fraudulently convert to his own use, bullion, money, bank notes, drafts, security for money, or any effects or property of any other person, which shall have come into his possession, or been placed under his care of management, by virture of his office, place or employment, he shall be guilty of the larceny thereof."

N.E.2d 519 (1956); *State v. Atwood*, 187 Kan. 548, 358 P.2d 726 (1961); *Urciolo v. State*, 272 Md. 607, 625-29, 325 A.2d 878, 889-91 (1974); *State v. Holdren*, 143 Mont. 103, 387 P.2d 446 (1963); *State v. Lawrence*, 13 Ohio Ops. 2d 195, 168 N.E.2d 21 (Comm. Pleas Ct., Miami Co. 1960); Annot., *Embezzlement by Independent Collector or Collection Agency Working on Commission or Percentage*, 56 A.L.R.2d 1156 (1957). In *State v. Moreno, supra*, 156 Conn. at 241-42, 240 A.2d at 875, the point was expressed in this fashion:

> "If at the time of a fraudulent conversion the accused was an agent for a particular purpose only and the property appropriated was entrusted to him by virtue of such agency, embezzlement is committed. It is, not the extent of the authority conferred, but the fact of the relationship which constitutes the essential element of the crime of embezzlement. [Citations omitted]."

Here, the State's evidence demonstrated that the title and licensing service was operated by the defendant and that his wife worked for him. The checks from Datsun covering the various title taxes and licensing fees were made payable either to the business, or to the defendant or his wife. The checks were, however, under the defendant's control, since they were placed in the business bank account. It was from this account that the misappropriation occurred, since the defendant, after lowering the amount of value of the vehicles on the title applications in order to pay reduced title taxes, drew checks on this account payable to the Department for the amounts then due. As in *Fraley*, the defendant here was entrusted with Datsun's checks for a specific purpose, to make a proper disbursement from his own account for the amount due on each title transfer.

The defendant's contention that he converted checks, and not money as charged in the indictment, lacks merit. The indictment alleged that the defendant was "entrusted with bullion, money, bank notes, drafts" of Datsun. We held in the first syllabus of *State v. Fraley, supra*, that "[a] check on a bank is the subject of embez-

zlement" under the forerunner to W. Va. Code, 61-3-20, which contained the same language. In *State v. Riley*, 151 W.Va. 364, 391, 151 S.E.2d 308, 374 (1966), we concluded the check was simply "the means by which the money alleged to have been embezzled was procured."

## III

The defendant complains of three evidentiary rulings made by the trial court. The first relates to the fact that some of the checks drawn by the defendant to the Department were returned to the Department by the bank because of insufficient funds. The court permitted the State to introduce these checks over the defendant's claim that the insufficient funds notation and the testimony of an employee of the Department, that the employee obtained custody of the checks after they had been returned from the bank, constituted evidence of a collateral crime—that of giving a worthless check under W. Va. Code, 61-3-39.

The chief problem faced by the prosecution was that in identifying the checks which were in the possession of the Department, it was apparent that the defendant's checks were returned by the bank to the Department because of insufficient funds rather than having cleared the bank because of sufficient funds and ending in the defendant's possession.

The question of when evidence of collateral crimes can be admitted was covered in considerable detail in *State v. Thomas*, ____ W.Va. ____, 203 S.E.2d 445, 454-57 (1974), not only in regard to the rule and its exceptions, but also in light of the various policy considerations, so that an extended discussion here is not warranted. It is sufficient to summarize *Thomas* by stating that evidence of collateral crimes is ordinarily not admissible unless it tends to show (1) motive; (2) intent; (3) the absence of accident or mistake; (4) a common scheme or plan embracing two or more crimes so that proof of one tends to establish the other; or (5) the identity of the defendant as the wrongdoer.

To a certain extent, the fourth exception in *Thomas* combines two separate concepts. First, it embraces a situation where the defendant embarks on a plan to commit a series of similar crimes which are interrelated. The charge here of multiple embezzlements is a typical situation in which a prosecutor may elect to try some, but not all, of the embezzlements. *See State v. Moyer*, 58 W.Va. 146, 52 S.E. 30 (1905). The defendant does not claim any error on this point.

The second concept is where, in the proof of a particular crime, the evidence may also tend to establish a related crime with which the defendant has not been charged. Thus, on a crime of breaking and entering which involves an intent to commit larceny, W. Va. Code, 61-3-11, the fact that the State proves the defendant committed larceny would not be barred as an inadmissible collateral crime, since the two offenses contain common elements. This latter principle is summarized in 29 Am. Jur. 2d *Evidence* § 321, as follows:

> "As a further exception to the rule of inadmissibility, when the fact of a former crime is an element in the offense charged, evidence of it is admissible. . . ."

This principle was more fully summarized in *Kugzruk v. State,* \_\_\_\_ Alaska \_\_\_\_, 436 P.2d 962, 967 (1968), *quoting from United States v. Wall*, 225 F.2d 905, 907 (7th Cir. 1955), *cert. denied*, 350 U.S. 935, 100 L. Ed. 816, 76 S.Ct. 307 (1956):

> "However, there are many well established exceptions to this rule [prohibiting evidence of other crimes] . . . to the end that all relevant facts and circumstances tending to establish any of the constituent elements of the crime of which the defendant is accused may be made to appear. Thus, evidence of other criminal acts has been held admissible by this court when they are so blended or connected with the one on trial as that proof of one incidentally involves the other; or explains the circumstances thereof; or tends logically to prove any element of the crime

charged. Such evidence is admissible if it is . . . so associated that proof of one tends to prove the other. . . ."

*See, e.g., United States v. Aleman,* 592 F.2d 881 (5th Cir. 1979); *United States v. Flick,* 516 F.2d 489, 495 (7th Cir. 1975), *cert. denied,* 423 U.S. 931, 46 L. Ed. 2d 260, 96 S.Ct. 282; *United States v. Grammer,* 513 F.2d 673, 677 (9th Cir. 1975); *United States v. McGovern,* 499 F.2d 1140, 1144 (1st Cir. 1974); *United States v. Roe,* 495 F.2d 600 (10th Cir. 1974), *cert. denied,* 419 U.S. 858, 42 L. Ed. 2d 92, 95 S.Ct. 107; *United States v. Brickey,* 426 F.2d 680, 687 (8th Cir. 1970), *cert. denied,* 400 U.S. 828, 27 L. Ed. 2d 57, 91 S.Ct. 55.

Here, the involved checks were an essential link in the State's embezzlement case. That they might have formed an essential element of another crime, that of giving a worthless check, does not foreclose their admissibility.[3]

The defendant makes a related complaint that the prosecutor made reference to the insufficient funds checks in his closing argument. The record reveals that these remarks were made not to intimate that the defendant was guilty of another offense, but in the context of identifying the checks as a part of the State's identification of the various items of documentary evidence. In

---

[3] Defense counsel urges on appeal that the court erred in refusing his request for a cautionary statement to the effect that the checks "are not related or do nothing to prove the offense charged but merely go towards the intent of this defendant, the insolvency." However, the checks did bear directly on the embezzlement charge, since they were signed by the defendant and showed the reduced amount paid on the title tax.

There may be occasions when a requested cautionary instruction is advisable to inform the jury that evidence of other crimes is not to be considered on the issue of guilt for the crime charged. *See, e.g., United States v. Miller,* 478 F.2d 1315, 1318 (2d Cir. 1973), *cert. denied,* 414 U.S. 851, 38 L. Ed. 2d 100, 94 S.Ct. 144; *People v. Chism,* 390 Mich. 104, 211 N.W.2d 193 (1973); *cf. State v. Evans,* 136 W.Va. 1, 11-12, 66 S.E.2d 545, 551 (1951) (by implication). This type of instruction is ordinarily not required where, as here, the facts of the other crime are a part of the element of the offense charged.

this respect, we believe that the prosecutor's statements were not improper, but even if they were, they would not fall within the rule stated in Syllabus Point 2 of *State v. Brewster*, ____ W.Va. ____, 261 S.E.2d 77 (1979):

> "'A judgment of conviction will not be reversed because of improper remarks made by a prosecuting attorney ... to a jury which do not clearly prejudice the accused or result in manifest injustice.' Syllabus Point 1 in part, *State v. Dunn*, W.Va., 246 S.E.2d 245 (1978)."

The third evidentiary error asserted by the defendant was that the trial court prevented his questioning of the State's witness Dolin, an employee of the Department, concerning another employee's involvement in "changing titles and pocketing tax money." Defendant relies on the rule that an accused may offer evidence to show that another person committed the crime for which the accused is charged.

For evidence of the guilt of someone other than the accused to be admissible, it must tend to demonstrate that the guilt of the other party is inconsistent with that of the defendant. *United States v. Pannell*, 178 F.2d 98 (3d Cir. 1949), *cert. dismissed*, 339 U.S. 927, 94 L. Ed. 1348, 70 S.Ct. 626 (1950); *Blevins v. State*, 51 Ala. App. 214, 220-22, 283 So.2d 664, 669-71 (1973); *State v. Sturdivant*, 31 N.J. 165, 155 A.2d 771, 777-80 (1959), *cert. denied*, 362 U.S. 956, 4 L. Ed. 2d 873, 80 S.Ct. 873 (1960); 1 J. Wigmore, *Evidence* § 139 (3d ed. 1940); *see Pettijohn v. Hall*, 599 F.2d 476, 480 (1st Cir. 1979), *cert. denied*, 444 U.S. 946, 62 L. Ed. 2d 315, 100 S.Ct. 308; *Commonwealth v. Graziano*, 368 Mass. 325, 329-30, 331 N.E.2d 808, 811 (1975).

The defendant's voucher of the record demonstrates that Dolin would have stated that the other Department employee had admitted altering certain title applications but not any submitted by Datsun, and that the employee had implicated the defendant as well as himself. Initially, it is clear that the questions directed to Dolin involved hearsay statements, since they involved

out-of-court admissions made by a third party to Dolin and were offered in evidence to prove the truth of the matter asserted and would thus not be admissible. Syllabus Point 5, *State v. Dudick*, ____ W.Va. ____, 213 S.E.2d 458 (1975); F. Cleckley, *Handbook on Evidence* § 48 (1978). Even if the other employee had been called, his testimony would not have been inconsistent with defendant's guilt, since his admissions related to a different transaction than the one involved in the indictment.

We thus conclude that the trial court did not err in excluding the proffered portion of Dolin's testimony.

## IV

The defendant's final claim of error relates to Defendant's Instruction No. 14, from which the trial court deleted the phrase stating that circumstantial evidence "must be scanned with great caution." He cites *State v. Williams*, 98 W.Va. 458, 468, 127 S.E. 320, 324 (1925), as approving this language, but there the Court merely identified certain defense instructions given by the trial court. One of the identified instructions contained the phrase "must be scanned with great caution," but the Court did not discuss its appropriateness.

It would appear that the use of the phrase, that circumstantial evidence must be scanned with great caution, is limited to those cases where the conviction rests upon circumstantial evidence alone, as demonstrated in Syllabus Point 3 of *State v. McHenry*, 93 W.Va. 396, 117 S.E. 143 (1923):

> "To convict on circumstantial evidence *alone*, it should to a moral certainty exclude every hypothesis but that of guilt; and circumstantial evidence should always be scanned with caution." [Emphasis added].

Identical language can be found in the second syllabus point of both *State v. Bennett*, 93 W.Va. 548, 117 S.E. 371 (1923), and *State v. Allen*, 139 W.Va. 818, 82 S.E.2d 423 (1954), and in the first syllabus of *State v. Maley*, 151 W.Va. 593, 153 S.E.2d 827 (1967).

588

In the present case, the evidence was not wholly, or even chiefly, circumstantial. The most critical evidence was that of Sheila McCauley and Kitty Thaxton, who testified they altered the title applications and prepared the corresponding checks to the Department at the defendant's direction and under his supervision. This is direct, not circumstantial, evidence. For this reason, we hold that no error was committed in amending the instruction.

We find no error in the trial, and thus affirm the judgment of the Circuit Court of Kanawha County.

*Affirmed.*