457 S.E.2d 482

**STATE of West Virginia, Plaintiff Below, Appellee,**

v.

**Charles Atlas MALICK, Defendant Below, Appellant.**

**No. 22271.**

Supreme Court of Appeals of West Virginia.

Submitted Feb. 28, 1995.

Decided March 29, 1995.

Carol A. Egnatoff, Asst. Atty. Gen., Charleston, for appellee.

Lawrence E. Sherman, Jr., Romney, for appellant.

WORKMAN, Justice:

Charles Atlas Malick appeals from the March 8, 1993, judgment order of the Circuit Court of Hampshire County, West Virginia, finding him guilty of first degree sexual assault following a jury verdict returned that same date. Having examined the record in full, we conclude that no reversible error was made and accordingly, affirm the decision of the lower court.

The factual allegations surrounding the sexual assault charge indicate that Appellant abused his then nine-year-old stepdaughter, Melissa T.,[1] on one occasion on an unspecified date between August 1 and 31, 1991. Mrs. Malick, Appellant's wife and the mother of Melissa, was taking a walk with her son, the biological child of Appellant, at the time of the alleged incident. The parties are in agreement that at the time of the alleged incident Melissa was being punished for having ventured unaccompanied down to a small

---

1. Consistent with previous cases in which we wish to protect the identity of the victim, we use initials to identify the victim. *See In re Jonathan* *P.*, 182 W.Va. 302, 303, 387 S.E.2d 537, 538 n. 1 (1989).

lake near the family's trailer. For this particular transgression Melissa had lost certain privileges, including the use of her bicycle, her hula hoop, and the right to attend the county fair. In addition, she was confined to her room.

What happened next was in dispute at trial. Melissa testified that Appellant called her to come into his bedroom. Upon entering the master bedroom, Appellant allegedly told Melissa that if she would perform what constitutes oral sex on him that he would return all the privileges she had lost plus give her a quarter. Melissa then allegedly performed the act of oral sex on Appellant and her privileges were reinstated as a result of complying with Appellant's directive. Within a short time after Melissa's mom returned from the walk, Melissa testified that she told her about the incident. Reportedly, Mrs. Malick and Appellant had a fight with regard to the incident as a result of Melissa's discussion with her mother. Mrs. Malick did not report the incident of sexual assault to any authorities at this time.[2]

Melissa testified that she immediately asked her mom to take her away from Appellant following the alleged sexual assault. Mrs. Malick and her children continued to live with Appellant until March 1992, purportedly due to the fact that Mrs. Malick was without sufficient financial means to accomplish a change of residence until March. In May 1992, Mrs. Malick informed her father, John Fields, that she had taken her two children and moved to Winchester, Virginia. When Mr. Fields suggested that she undergo marriage counseling to try to patch things up with Appellant, Mrs. Malick stated that she could "never go back, because this is what ... [Appellant] ... did to ... [her] daugh-

ter" and then proceeded to describe the assault.

It was Mr. Fields who first informed the authorities regarding the alleged assault. He initially called an "800" number in Richmond, Virginia, where he resides and was told to contact officials in Frederick County, Maryland, where Melissa was then residing. He followed this directive and ultimately spoke with West Virginia State Police Trooper C.J. Ellison. Trooper Ellison contacted Mrs. Malick on July 15, 1992, to advise her of the report made by Mr. Fields. Mrs. Malick and Melissa met with Trooper Ellison on October 10, 1992, at which time a statement was obtained from Melissa regarding the subject assault.

Appellant assigns as error: (1) exclusion of all evidence about a separate instance of sexual abuse involving another defendant and Melissa; (2) denial of his motion in limine to exclude Mrs. Malick's testimony under the spousal immunity doctrine; and (3) denial of his motion seeking a psychological evaluation of the alleged victim.[3]

Appellant's primary assignment of error involves the granting of the State's motion in limine to prohibit any evidence from being admitted at trial regarding another sexual assault perpetrated against Melissa in August 1991. On the morning of trial, the State made a motion to exclude all evidence pertaining to the case of State v. Wagner,[4] a case which resulted in the entry of a guilty plea by John Wagner. The court fully considered the motion as the record demonstrates:

THE COURT: Is it [the Wagner case] in any way connected with this defendant or the charges against this defendant?

---

2. Mrs. Malick testified that she did not notify the authorities because she did not want her daughter to have to go through the ordeal of testifying in open court about the incident.

3. Appellant assigned additionally the following errors: (1) denial of his motion for acquittal; (2) failure to use his jury instruction; (3) permitting leading testimony of the alleged victim; and (4) allowing the State to inquire about his alcoholism. After reviewing the record in conjunction with these alleged errors, we find no merit to these assignments and accordingly do not address these issues.

4. In response to the court's granting of the State's motion to exclude all evidence regarding the Wagner case Appellant's counsel argued, "We do feel that it would substantially take away from our case. Basically, that is our case." Additionally, Appellant includes in his brief— "There is no question that this assignment of error is certainly the Appellant's most serious assignment of error and basically is the assignment of error that the Appellant ... is hanging his hat [on]." This is the extent of Appellant's legal argument.

[STATE]: No, Your Honor, not to our knowledge.

. . . .

THE COURT: Why would the State, or why would the defense use this?

[APPELLANT]: We feel that using this case is extremely important to our case. The alleged act that took place in the Wagner case took place in August of '91 the same month that the alleged act took place with Mr. Malick. The worst part about it, in the case of State v. Wagner, part of the plea was that the mother would take money that was given by the defendant and let the child [obtain] counsel[ing]. The mother took the money and bought herself a new car with it. The child never got the counselling that she needed for the incident that took place in August of '91 with Mr. Wagner; therefore, basically, Your Honor, we're trying the first case today. We feel that is . . ., one of our biggest defenses, that she never received—

THE COURT: The Court believes it would be improper to use that in this case. It has no bearing upon the guilt or innocence of this accused.

■ In syllabus point five of *State v. Frasher*, 164 W.Va. 572, 265 S.E.2d 43 (1980), we recognized that "[f]or evidence of the guilt of someone other than the accused to be admissible, it must tend to demonstrate that the guilt of the other party is inconsistent with that of the defendant." *Id.* at 573, 265 S.E.2d at 45. We expanded upon this concept in syllabus point one of *State v. Harman*, 165 W.Va. 494, 270 S.E.2d 146 (1980), in holding that:

In a criminal case, the admissibility of testimony implicating another party as having committed the crime hinges on a determination of whether the testimony tends to directly link such party to the

crime, or whether it is instead purely speculative. Consequently, where the testimony is merely that another person had a motive or opportunity or prior record of criminal behavior, the inference is too slight to be probative, and the evidence is therefore inadmissible. Where, on the other hand, the testimony provides a direct link to someone other than the defendant, its exclusion constitutes reversible error.

*Id.,* 270 S.E.2d at 148.

■ Appellant failed to meet the standard established for introducing evidence that another party—Mr. Wagner—was the perpetrator of the sexual abuse incident at issue. First and foremost, is the fact that the commission of a sexual crime against the same victim in this case by Mr. Wagner in the same month as the crime alleged against Appellant is in no way inconsistent with the guilt of Appellant. *See Frasher,* 164 W.Va. at 573, 265 S.E.2d at 45, syl. pt. 5. As sad as it is that the nine-year-old victim may had to endure two sexual offenses in one month of her young life, it is certainly not an impossibility.[5] But more importantly, the entering of a guilty plea by Mr. Wagner to committing a sexual offense charge against Melissa in August 1991 does not contraindicate the guilt of Appellant with regard to the crime at issue.

■ Just as Appellant failed to meet the *Frasher* test, he similarly cannot meet the *Harman* test of establishing a direct link between Mr. Wagner and the crime at issue. The factual nature of the crime charged against Appellant includes specified allegations regarding the location of the occurrence and the identity of the perpetrator. Appellant has never disputed that he was alone with Melissa in the trailer at the time of the alleged crime; he merely denies that he "did that type thing to any person."[6] The record

---

5. Appellant states in his brief,

[y]our Appellant would argue that he passes the *Frasher* test in that his guilt would be inconsistent with that of John Wagner as it appears from the evidence of the *Wagner* case that it is plausible to believe that only one act took place in August, [sic] 1991, and that it involved only John Wagner and that such act is inconsistent with the Appellant and that the

jury should have been able to decide, in taking into account, the evidence of the *Wagner* case. This argument is stated without any further support and appears to be baseless.

6. Mr. Fields testified at trial that when he confronted Appellant regarding the alleged incident, Appellant stated, "If something like that happened, it had to be the old Atlas, it couldn't be me." The old versus the new Atlas refers appar-

is completely devoid of any evidence that would provide the requisite direct link between Mr. Wagner and the sexual assault on Melissa that occurred in August 1991 in Appellant's trailer. Appellant does not even come close to meeting the *Harman* test of direct linkage as there is not a single shred of evidence in the record which implicates Mr. Wagner as being the individual who committed the assault against Melissa that occurred inside Appellant's trailer. *See* 165 W.Va. at 494, 270 S.E.2d at 148, syl. pt. 1. Accordingly, we conclude that the trial court correctly ruled that any evidence regarding the John Wagner case "ha[d] no bearing upon the guilt or innocence of this [Appellant]. . . ."

■ Appellant also asserts as error the court's denial of his motion in limine to prevent Mrs. Malick from testifying at trial. In support of this motion, he cites the spousal immunity doctrine. The common law against spousal testimony has been modified legislatively. West Virginia Code § 57–3–2 (1966) provides that "[h]usband and wife shall be competent witnesses to testify for or against each other in all cases, civil and criminal, except as otherwise provided." *Id.* The parameters of permitting one spouse to testify against another in a criminal proceeding are specifically addressed by West Virginia Code § 57–3–3 (1966), which states:

> In criminal cases husband and wife shall be allowed, and, subject to the rules of evidence governing other witnesses, may be compelled to testify in behalf of each other, but neither shall be compelled, nor, without the consent of the other, allowed to be called as a witness against the other *except in the case of a prosecution for an offense committed* by one against the other, or *against the child,* father, mother, sister or brother *of either of them.* The failure of either husband or wife to testify, however, shall create no presumption against the accused, nor be the subject of

any comment before the court or jury by anyone.

*Id.* (emphasis supplied).

The State correctly argues that the exception set forth in West Virginia Code § 57–3–3, which permits a spouse to testify against the other when an offense against a "child . . . of either of them," is being prosecuted is dispositive of this issue. *Id.* Appellant suggests that this exception should not apply because Melissa is his stepchild and not his natural child. We find it unnecessary to address the issue of whether the statute encompasses stepchildren as Melissa is the biological child of Mrs. Malick and the statute is couched in terms of a child of *"either"* spouse, not both of them. *See* W.Va.Code § 57–3–3 (emphasis supplied).

■ Furthermore, Appellant failed to identify any specific portion of Mrs. Malick's testimony that should have been excluded under the spousal immunity doctrine. Upon examination, the record indicates that Mrs. Malick did not offer any testimony regarding communication between herself and Appellant; she testified only as to the communication between herself and Melissa and the actions she took following her apprisal of the alleged assault.[7] Given the clear applicability of the prosecution involving a child exception found in West Virginia Code § 57–3–3, we find no error as to this assignment.

■ The final assignment of error which we address is Appellant's claim that he was wrongfully denied the opportunity to have a psychological evaluation performed on Melissa. Appellant waited until the morning of trial to orally request the psychological examination. As grounds for his motion, Appellant stated only that "based upon my interview of her [Melissa] at that particular date [Friday before trial],[8] it was my impression that a psychological examination of the

---

ently to the fact that Appellant became "born again" at some point during hospitalization for alcohol abuse.

**7.** The only testimony provided by Mrs. Malick that related specifically to Appellant was elicited on cross-examination.

**8.** The record indicates that this was the first time Appellant's counsel interviewed Melissa.

victim might be in order." [9]  The Court delayed ruling on the motion until just prior to the time when Melissa took the stand.  In denying Appellant's motion, the Court explained that it

> believes, in observing the young lady, that she is capable and confident, for one of her age, to relate what she has seen, and we'll see more when she testifies.  You can inquire in your cross examination concerning matters that you think might be pertinent, but she is a capable witness.

When Appellant renewed his motion once more upon moving for a directed verdict, the trial judge opined, "The Court has observed the child while she was testifying, and the Court does not believe there's any indication that that [psychological evaluation] is needed or would be helpful."

Appellant states in his brief that Melissa "lacked the mental capacity to testify in this case" and further, "that she did not possess sufficient mental capacity to receive, remember and relate with reasonable accuracy the facts in question and ... that she did not understand the difference between the truth and falsehood and ... that she did not understand the moral importance of telling the truth."  Upon examination, however, this amounts to nothing more than a boldfaced assertion which the record fails to substantiate.

The record reveals that Melissa, who was eleven years old at the time of trial, accurately responded to the introductory factual questions posed to her on direct examination.  She stated her name, age, date of birth, current and past addresses, school and grade, as well as the names of her teacher and counselor.  She was questioned as to her understanding of the importance of telling the truth and indicated that she understood that "telling the truth" was the most important thing about coming to court.  Melissa fully responded to questions about the events preceding, during, and post-assault.  Melissa's testimony regarding the events following the assault were corroborated by Mrs. Malick's testimony.  Appellant, himself, corroborated Melissa's testimony concerning Mrs. Malick's confrontation of Appellant on the date of the alleged assault.

Appellant failed to note any inaccuracies, inconsistencies, or any difficulty on Melissa's part in comprehending or responding to the questions posed.  On the contrary, the petition for appeal recognizes that Melissa "was quite articulent [sic] and showed enormous amount of intelligence...."  The record indicates that Appellant never challenged Melissa's comprehension or accuracy as it related to any part of her testimony except that portion which incriminated Appellant.

■ The law is clear that a trial judge has great latitude and discretion in determining whether a minor is competent to testify.  As we held in *State v. Daggett*, 167 W.Va. 411, 280 S.E.2d 545 (1981), "The trial judge was in the best position to evaluate the infant's competence.  The infant's demeanor and his understanding of the nature and effect of the oath are far better determined through live examination by the trial judge than by appellate review of the trial record." *Id.* at 426–27, 280 S.E.2d at 555.

Quite simply, Appellant failed to meet his burden of demonstrating that the court abused its discretion in denying the requested psychological evaluation. *See Daggett,* 167 W.Va. at 426, 280 S.E.2d at 554.  Finding no abuse of discretion as to the denial of Appellant's motion for such an evaluation, we conclude that no reversible error was committed by the trial court.

Based on the foregoing, the decision of the Circuit Court of Hampshire County is hereby affirmed.

Affirmed.

---

**9.** Just prior to Melissa taking the stand, Appellant renewed his motion for a psychological examination "in order to tell the Court whether, indeed, she was relaying this particular incident that took place with Mr. Wagner to Mr. Malick[.]"