**STATE OF WEST VIRGINIA**
**SUPREME COURT OF APPEALS**

**State of West Virginia,**
**Plaintiff Below, Respondent**

**vs) No. 15-1017** (Harrison County 14-F-5-2**)**

**Adam Derek Bowers**
**Defendant Below, Petitioner**

**FILED**
**March 2, 2017**

released at 3:00 p.m.
RORY L. PERRY, II CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**MEMORANDUM DECISION**

Petitioner Adam Derek Bowers, by counsel Christopher M. Wilson and David B. DeMoss, appeals the September 22, 2014, order entered by the Circuit Court of Harrison County, West Virginia, sentencing petitioner upon his conviction of two counts of first degree sexual assault, one count of burglary and one count of first degree robbery. Petitioner was sentenced to a term of imprisonment of not less than fifteen nor more than thirty-five years for each of the first degree sexual assaults, to be served consecutively; to a term of imprisonment of not less than one nor more than fifteen years for burglary, to run concurrently; and to a term of imprisonment of forty years for first degree robbery, to run consecutive to the other counts. Respondent State of West Virginia (hereinafter "the State"), by counsel James Armstrong, filed a response and petitioner filed a reply. Petitioner assigns two errors on appeal. The first issue[1] is whether the circuit court erred in precluding

---

[1]The first assigned error is as follows:

The Trial Court erred in precluding the Defendant's admission of certain evidence pursuant to its Order Granting State's Motion, as Amended, to Preclude Reference to Any Admission of Guilty Pleas or Particular Conduct or Court Proceedings of Joseph Buffey and Prohibiting any Reference, Introduction or Use at Trial herein of any Admission of Guilty Pleas or Particular Conduct or Court Proceedings of Joseph Buffey

(continued...)

1

petitioner from admitting or referencing the guilty plea entered by, particular conduct of, and court proceedings relating to Joseph Buffey (also referred to as "the Buffey materials").[2] The second assigned error is whether the circuit court erred in denying petitioner's motion for judgment of acquittal or, alternatively, motion for a new trial.

Having thoroughly reviewed the appendix record, the parties' briefs and oral arguments, the applicable law and all other matters before the Court, the Court finds no substantial question of law and no prejudicial error. For these reasons, a memorandum decision affirming the circuit court's order is appropriate under Rule 21 of the West Virginia Rules of Appellate Procedure.

---

[1](...continued)
        entered May 5, 2015.

The error as assigned is convoluted and confusing. We, therefore, rephrase it for purposes of this appeal.

[2]Initially, Joseph Buffey was identified as a suspect in the case involving the same crimes of which petitioner stands convicted. *See Buffey v. Ballard*, 236 W. Va. 509, 512, 782 S.E.2d 204, 207 (2015). Mr. Buffey repeatedly stated that he was not involved in the crimes perpetrated against the victim, however, he admitted that he "had broken into '[t]his old lady's house[,]' but said he could not recall any sexual assault." *Id*. Mr. Buffey ultimately entered a guilty plea to two counts of first degree sexual assault and one count of robbery, wherein he admitted to breaking into Mrs. L.'s home, robbing her and forcing her to have sex with him. *See id.* at 513-14, 782 S.E.2d at 208-09; *see also infra* note 3. Despite his guilty plea, this Court noted in *Buffey* that there were numerous inconsistencies with the actual facts of the case as the police knew them and what Mr. Buffey was telling the police. *Id.* at 512 n.4, 782 S.E.2d at 207 and n.4.

We reversed the circuit court's denial of habeas relief to Mr. Buffey and remanded the case to the lower court to allow Mr. Buffey to withdraw his guilty plea. *Id*. at 511, 782 S.E.2d at 206. The Court found that Mr. Buffey had repeatedly requested the results of DNA testing and that the State had incorrectly informed him that the testing was not complete. Instead, the results of the DNA testing had been obtained six weeks prior to Mr. Buffey's plea hearing. The Court found that the DNA results were favorable to Mr. Buffey as the results indicated that the DNA did not come from Mr. Buffey. Thus, the Court determined that the State had violated Mr. Buffey's due process rights in suppressing the exculpatory evidence. *See id.* at 513 and 526, 782 S.E.2d at 208 and 221.

2

On November 30, 2001, Mrs. L.,[3] who was eighty-three years old at the time,[4] was sexually assaulted, both vaginally and orally, at knifepoint, during a burglary and robbery that occurred in her home in Clarksburg, West Virginia. Mrs. L. lived alone and in the early morning hours on that day, she was awakened by her assailant in her bedroom, which was located on the second floor of her home.[5] The victim's son, Joseph L., who was a lieutenant with the Clarksburg Police Department at the time the crimes were committed against his mother, testified at trial. Joseph L. stated that his mother told him that "they shined a flashlight" in her eyes and that they were behind her.[6] Joseph L. also testified that his mother was instructed not to ever turn around. They first took his mother downstairs, wanting to know how much money she had. She gave them the nine dollars in cash that she had in purse. They then took her back upstairs to her bedroom, where they sexually assaulted her. Then, "they tied" her up with belts before leaving her home.

The victim was taken to United Hospital Center for medical treatment and to have a sexual assault examination. Dori Josimovich, a SANE nurse, treated Mrs. L. The SANE nurse testified that the victim told her that her attacker was white and said he entered her home through the side door.[7] Mr. L.'s son also testified that he had found the side door ajar.

---

[3]Pursuant to West Virginia Rule of Appellate Procedure 40(e), we identify the victim, and the victim's son in this case by their initials. *See also State v. Edward Charles L.*, 183 W. Va. 641, 645 n.1, 398 S.E.2d 123, 127 n.1 (1990) (stating that "[c]onsistent with our practice in cases involving sensitive matters, we use the victim's initials. . . . *See Benjamin R. v. Orkin Exterminating Co.*, 182 W. Va. 615, 390 S.E.2d 814 n. 1 (1990) (citing *In re Jonathan P.*, 182 W. Va. 302, 303, 387 S.E.2d 537, 538 n. 1 (1989)); *State v. Murray*, 180 W. Va. 41, 44, 375 S.E.2d 405, 408 n. 1 (1988).").

[4]At the time of petitioner's trial, the victim was ninety-seven years old and suffered from advanced dementia. She did not testify during the trial.

[5]Mrs. L's statements, including those made to her son, the sexual assault nurse examiner (hereinafter "SANE nurse") and the investigating officer with the Clarksburg Police Department, Lt. Robert Matheny, were admitted during trial. The admissibility determination is not at issue in the instant appeal.

[6]Joseph L. testified that his mother indicated to him that there was more than one assailant; however, as discussed herein, the SANE nurse testified the victim indicated just one assailant.

[7]According to Robert Matheny, who was a lieutenant with the Clarksburg Police
(continued...)

3

Mrs. L. further told the SANE nurse that the attacker had robbed her first and then sexually assaulted her. A sexual assault kit was utilized and swabs from the victim's vagina were taken for analysis, as well as the panty liner the victim had been wearing. The victim was diagnosed with "[a]nterior fourchette reddened with second degree tear between the anus and the vaginal opening." Three sutures were needed to repair the second degree tear. According to the information provided to the SANE nurse, there was only one assailant and her assailant did not use a condom.

During the investigation of the crime, the police also collected as evidence a tissue that the victim had used to clean herself following the attack and the bedding from the victim's bedroom where the sexual assault occurred. Further, the belts that bound Mrs. L. were also collected as evidence.

Approximately ten years after the crimes were perpetrated against Mrs. L., during the pendency of the habeas corpus proceeding involving Mr. Buffey,[8] forensic testing was performed on the victim's bedding that had been collected as evidence at the time of the crime, the vaginal swabs collected during the examination of the victim and the tissue collected from the crime scene. Allen Keahl, a forensic scientist with Forensic Analytical Sciences, testified that the presence of semen was found on both the vaginal swabs and a cutting from the fitted sheet that was taken from Mrs. L.'s bed. Mr. Keahl stated that "the majority[9] of semen that is detected" by the data "comes back to a single male." (Footnote added). The DNA profile was then entered into the national Combined DNA Index System ("CODIS"). This profile matched a convicted felon in prison in this State, who was identified as petitioner.

Based upon the match found using CODIS, Lieutenant Jason Snider of the Clarksburg Police Department obtained a search warrant in order to get a sample of petitioner's DNA by using an oral swab. At that time, petitioner was incarcerated in the Northern Regional Jail and

---

[7](...continued)
Department at the time of the crimes, Mrs. L. gave a description of her attacker from what she saw of him during the crime, including what her attacker was wearing and that he kept a bandanna over the lower part of his face. The victim also indicated that her attacker used a knife.

[8]*See supra* note 2.

[9]Mr. Keahl testified that "there was some other evidence to a second sperm contributor that was revealed in the Y chromosome testing but it was such a low level we weren't sure that it was an artifact or not."

4

Correctional Center serving time on unrelated crimes including breaking and entering and unlawful assault. As a result of the DNA obtained from petitioner, he was identified as the perpetrator of the crimes against Mrs. L. According to Mr. Keahl, the genic profile, which was developed and identified as matching petitioner's DNA profile, was determined to occur in approximately one out of forty billion people. Mr. Keahl further testified that in his opinion "to a reasonable degree of scientific certainty" the DNA profile that was generated "from the partial vaginal swabs one, two, three, and four and the fitted sheet cutting H and area A is that of the Defendant, Mr. Bowers[.]"

Petitioner testified on his own behalf at his trial. At the time of the crime, petitioner was sixteen years old. He stated that he knew where the victim lived as he had delivered papers to her home, which was in his neighborhood. Petitioner, however, denied any involvement in the crimes charged.

At the close of all the evidence, the jury convicted petitioner on the crimes charged.

First, we address petitioner's argument that the circuit court erred in precluding him from admitting or referencing the guilty plea entered by, particular conduct of, and court proceedings relating to Joseph Buffey.[10] As this assignment of error is based upon the exclusion of evidence, we invoke the following standard of review: "'Rulings on the admissibility of evidence are largely within a trial court's sound discretion and should not be disturbed unless there has been an abuse of discretion.' *State v. Louk*, [171] W. Va. [639, 643,] 301 S.E.2d 596, 599, (1983)." Syl. pt. 2, *State v. Peyatt*, 173 W. Va. 317, 315 S.E.2d 574 (1983); *accord State v. Guthrie*, 205 W. Va. 326, 332, 518 S.E.2d 83, 89 (1999).

Prior to trial, the State filed a motion to preclude reference and admission of the Buffey materials. Petitioner opposed the motion, arguing that

> [t]here is no question that the Buffey materials provide a direct link to the identification of Mr. Buffey as the perpetrator in the crime committed against the victim in the matter. Along with introduction of the fact that the investigation totally and completely shifted from a single perpetrator theory to a multiple perpetrator theory – even where that is inconsistent with the evidence at hand – the Defendant should be permitted the opportunity to offer evidence to show that another person committed the crime for which he is now accused. In order to do

---

[10]*See supra* note 2.

so, the Defendant must be permitted the opportunity to reference, introduce or otherwise utilize the guilty pleas previously entered by Joseph Buffey. . . .

The circuit court conducted a hearing on the motion on October 31, 2014. By order entered May 5, 2015, the circuit court granted the State's motion and prohibited petitioner from "making any reference to, introduction or use of any admissions of Joseph A. Buffey and/or Joseph A. Buffey's particular conduct and court proceedings at the trial of Defendant, Adam D. Bowers, in this particular criminal matter." The circuit court determined that the Buffey materials lacked "sufficient relevancy" and probative value in regards to petitioner's case. The circuit court was also concerned with confusion of issues and unnecessarily misleading the jury. As the circuit court found:

> Such evidence is deemed to not establish any alternative perpetrator theory in keeping with applicable case law authority asserted as being supportive of Mr. Bowers['s] arguments and position in this instant matter. It would only provide Mr. Bowers a means for collaterally attacking the State's initial single perpetrator theory which became a two perpetrator theory as a result of Mr. Buffey's Habeas proceedings and related DNA testing upon which a CODIS data base search was conducted that has purportedly identified Mr. Bowers.

The circuit court further found that "[t]he 'Buffey materials'. . . in this Court's estimation, do not provide a direct link to the identification of Mr. Buffey as the perpetrator (and not Mr. Bowers) in the crime committed against the victim in this matter." Finally, the circuit court further determined that "Mr Buffey's guilty pleas, admissions or particular conduct are not deemed by this Court to be evidence which demonstrates his guilt as being inconsistent with that of Mr. Bowers and, as such, they do not unilaterally constitute an alternative perpetrator defense."

Petitioner argues[11] that in a case where the victim identified a single perpetrator and an individual other than petitioner pleaded guilty to the crimes charged, evidence regarding the investigation and conviction of the other individual is crucial to petitioner's ability to present a complete defense. Thus, petitioner argues that the Buffey materials were admissible as they were relevant and not too prejudicial. *See* W. Va. R. Evid. 401, 402 and 403.

Conversely, the State argues that the DNA evidence proving petitioner's involvement in the crimes perpetrated in this case was "definitive and unassailable." Thus, the State contends that based upon the evidence at trial, "the probability that another male left this genetic material is so incredibly infinitesimal that it is almost incalculable." Consequently, the State, relying upon this Court's decision in *State v. Frasher*, 164 W. Va. 572, 265 S.E.2d 43 (1980), *overruled on other grounds as stated in State v. Guthrie*, 194 W. Va. 657, 461 S.E.2d 163 (1995), argues that the circuit court correctly precluded the admissibility of the Buffey materials. In *Frasher*, the defendant was convicted of embezzlement. During his trial, the circuit court prevented the defendant from questioning a witness for the State concerning another employee's involvement in other embezzlement-type actions. This Court held in

---

[11]Petitioner also argues that admissibility of the Buffey materials is supported by the State's disclosure of those materials as "potentially exculpatory" material under *Brady v. Maryland*, 373 U.S. 83 (1963). *See* Syl. Pt. 2, *State v. Youngblood*, 221 W. Va. 20, 650 S.E.2d 119 (2007) ("There are three components of a constitutional due process violation under *Brady v. Maryland*, 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed.2d 215 (1963), and *State v. Hatfield*, 169 W. Va. 191, 286 S.E.2d 402 (1982): (1) the evidence at issue must be favorable to the defendant as exculpatory or impeachment evidence; (2) the evidence must have been suppressed by the State, either willfully or inadvertently; and (3) the evidence must have been material, i.e., it must have prejudiced the defense at trial."). According to petitioner, because the State produced the materials during discovery they are necessarily "directly relevant to the guilt of the Defendant[,]" and, consequently, the failure to admit those materials resulted in the petitioner being denied a "'meaningful opportunity to present a complete defense.'" *Holmes v. South Carolina*, 547 U.S. 319, 324 (2006) (determining that exclusion of defense evidence of third-party guilt denied defendant a fair trial).

We easily dispose of this argument as petitioner ignores the principle under *Brady* that "[t]he duty to disclose exculpatory evidence extends to all 'favorable information' *irrespective of whether the evidence is admissible at trial.*" *State v. Robinson*, 146 S.W.3d 469, 512 (Tenn. 2004) (citing *Johnson v. State*, 38 S.W.3d 52, 56 (Tenn. 2001))(emphasis added); *accord Berry v. State*, 366 S.W.3d 160, 175-76 (Tenn. Crim. Ct. App. 2011). Consequently, simply because the information was disclosed by the State does not mean that the information was automatically admissible at trial.

syllabus point five of *Frasher* that "[f]or evidence of the guilt of someone other than the accused to be admissible, it must tend to demonstrate that the guilt of the other party is inconsistent with that of the defendant." *Id*. at 573, 265 S.E.2d at 45. The Court, in *Frasher*, determined that the admission about the other employee was not inconsistent with the defendant's guilt regarding the charges against the defendant as the other employee's guilt concerned a different transaction than the one with which the defendant was charged. *Id*. at 587, 265 S.E.2d at 52. As the State posits, petitioner cannot demonstrate that Mr. Buffey's guilt is inconsistent with the petitioner's guilt. *See Frasher*, 164 W. Va. at 573, 265 S.E.2d at 45, Syl. Pt. 5. Rather, according to the State, all that the Buffey materials could possibly establish is that there was complicity between petitioner and Mr. Buffey in committing the crimes, not that Mr. Buffey was the sole perpetrator to the exclusion of petitioner. We agree with the State's position.

Our review of the evidence leads us to the conclusion that there is no merit to petitioner's argument. Petitioner's fixation with the single perpetrator theory used in the *Buffey* case and that the single perpetrator theory somehow controls the determination of whether the Buffey materials were admissible in the instant case is legally not supportable. The circuit court engaged in a thorough examination of the admissibility of the Buffey materials in reaching its determination that those materials were not relevant to whether petitioner was guilty. Further, petitioner completely ignores the DNA evidence against him, going so far in his reply brief to argue that "[t]he forensic testing is not an issue in the instant appeal." Under *Frasher*, however, because the DNA evidence against petitioner inextricably links him to the crimes charged, the Buffey materials are not inconsistent with petitioner's guilt. Consequently, the circuit court did not abuse its discretion in its determination of the admissibility of the evidence at issue.

Petitioner next argues that the circuit court erred in denying his motion for judgment of acquittal or, alternatively, motion for a new trial. Petitioner maintains that the State failed to present sufficient evidence of the crimes charged. Specifically, petitioner contends the State did not establish any link between petitioner and the weapon that the victim alleged was used during the sexual assault and robbery sufficient to support his convictions under Counts I, II and IV in the indictment.[12] Further, petitioner contends that the State failed to introduce

---

[12]Counts I and II pertained to sexual assault in the first degree. According to West Virginia Code § 61-8B-3, a person is guilty of this crime when "[t]he person engages in sexual intercourse or sexual intrusion with another person and, in so doing: . . . [e]mploys a deadly weapon in the commission of the act . . . ." Count IV in the indictment concerns first degree robbery and also required the use of a weapon. According to West Virginia Code

(continued...)

any evidence that the victim's home was broken into and entered by anyone, which was a necessary element for his burglary conviction.[13]

As this Court has previously held syllabus points one and three of *Guthrie*:

> The function of an appellate court when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, is sufficient to convince a reasonable person of the defendant's guilt beyond a reasonable doubt. Thus, the relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proved beyond a reasonable doubt.

> A criminal defendant challenging the sufficiency of the evidence to support a conviction takes on a heavy burden. An appellate court must review all the evidence, whether direct or circumstantial, in the light most favorable to the prosecution and must credit all inferences and credibility assessments that the jury might have drawn in favor of the prosecution. The evidence need not be inconsistent with every conclusion save that of guilt so long as the jury can find guilt beyond a reasonable doubt. Credibility determinations are for a jury and not an appellate court. Finally, a jury verdict should be set aside only when the record contains no evidence, regardless of how it is weighed, from which the jury could find guilt beyond a reasonable doubt.

194 W Va. at 663, 461 S.E.2d at 169.

---

[12](...continued)
§ 61-2-12(a), "[a]ny person who commits or attempts to commit robbery by: . . . us[ing] the threat of deadly force by the presenting of a firearm or other deadly weapon, is guilty of robbery in the first degree . . . ."

[13]This claim concerns Count III of the indictment, which is the burglary charge. According to West Virginia Code § 61-3-11(a), a burglary is committed "[i]f any person shall, in the nighttime, break and enter . . . the dwelling house . . . of another, with intent to commit a crime therein . . . ."

Evidence presented during petitioner's trial shows that the victim told her son and others that a knife was used during the commission of the crimes. According to the State, the victim described a knife being used during the perpetration of the sexual assaults and the robbery. The State also presented DNA evidence that linked petitioner to the crimes charged, as the DNA evidence came from vaginal swabs taken from the victim as well as bedding removed from the victim's bedroom where the sexual assaults occurred.

Moreover, regarding the burglary conviction, the evidence offered by the State during trial established that while the victim was asleep her attacker or attackers broke into and entered her home in order to commit robbery and to sexually assault her. There was no evidence that the victim invited her attacker(s) into her home. Rather, Mrs. L. told the SANE nurse that her attacker said he had entered her home through the side door. Finally, the victim's son testified that the victim's side door to her home was ajar. Based upon all the above, sufficient evidence was presented from which the jury could find that petitioner was guilty of the crimes charged in the indictment beyond a reasonable doubt.

For the foregoing reasons, we affirm.

Affirmed.

**ISSUED:** March 2, 2017

**CONCURRED IN BY:**

Chief Justice Allen H. Loughry II
Justice Robin Jean Davis
Justice Margaret L. Workman
Justice Menis E. Ketchum
Justice Elizabeth D. Walker